# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

FILED BY_____D.C.

APR 3 0 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

**UNITED STATES OF AMERICA,**
Respondent,

v.                                                          Case No. **17-20631-CR-SCOLA-2**

**VLADIMIR PRADO, SR.,**

Petitioner.

## MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE

COMES NOW, Petitioner, Vladimir Prado, Sr., appearing pro se, and respectfully moves this Honorable Court for the early termination of his term of supervised release pursuant to 18 U.S.C. § 3583(e)(1). Petitioner brings this motion based on his unwavering compliance with all conditions of supervision, his substantial rehabilitation efforts both during incarceration and throughout his time on supervised release, and his demonstrated reintegration into society as a productive, law-abiding citizen. Mr. Prado has consistently exhibited a commitment to personal growth, responsibility, and positive community impact. Given these compelling circumstances, the interests of justice and the statutory framework strongly favor granting early termination. In support of this motion, Mr. Prado respectfully submits the following:

## I. BACKGROUND

On April 20, 2018, Mr. Prado was sentenced to 97 months of imprisonment and three years of supervised release after pleading guilty to one count of conspiracy to commit health care fraud and wire fraud in violation of 18 U.S.C. § 1349. His case, adjudicated

in the Southern District of Florida under Case No. 17-20631-CR-SCOLA-2, stemmed from alleged fraudulent claims submitted through medical clinics he was associated with.

During his incarceration, Mr. Prado demonstrated an extraordinary commitment to rehabilitation and self-improvement. He successfully completed the Residential Drug Abuse Program (RDAP), an intensive, evidence-based treatment initiative known for significantly lowering recidivism rates. In addition, he earned a Commercial Driver's License (CDL) certification and served as a welding instructor, contributing his skills and leadership to help others develop vocational trades while in custody. Mr. Prado also completed parenting classes, further demonstrating his dedication to strengthening family ties and preparing for a positive reentry into the community.

Since his release, Mr. Prado has maintained impeccable compliance with all terms of supervision, remained law-abiding, and continuously demonstrated a commitment to personal growth, family responsibilities, and community reintegration. His conduct throughout both incarceration and supervised release shows not only adherence to the law but meaningful rehabilitation and transformation.

## II. APPLICABLE LAW

Pursuant to 18 U.S.C. § 3583(e)(1), a district court has broad authority to terminate a term of supervised release at any time after the expiration of one year if, after considering the factors set forth in 18 U.S.C. § 3553(a), it is satisfied that such action is warranted by the conduct of the defendant and the interests of justice. See United States v. Johnson, 529 U.S. 53, 59 (2000) (explaining that supervised release is intended to facilitate a defendant's successful reintegration into the community and that successful compliance can justify early termination).

Under § 3583(e)(1), courts routinely grant early termination based on post-sentencing rehabilitation and consistent compliance with the terms of supervised release. Notably, courts recognize that a defendant need not show extraordinary circumstances; substantial compliance combined with genuine rehabilitation and positive community reintegration are sufficient grounds. See United States v. McKay, No. 22-3053, 2022 WL

2833982, at *2 (D. Kan. July 20, 2022) (noting that early termination is appropriate when a defendant's conduct demonstrates that continued supervision is no longer needed).

Thus, early termination is not a rare exception but a judicially encouraged outcome when a supervisee has demonstrated sustained rehabilitation and law-abiding conduct. Mr. Prado's case squarely fits within the statutory framework and jurisprudence supporting early termination.

### III. **JUDICIAL CONFERENCE GUIDANCE**

The Judicial Conference of the United States, through its Committee on Criminal Law, has long encouraged district courts to grant early termination of supervised release for individuals who demonstrate sustained rehabilitation and law-abiding conduct. In its 2020 policy recommendations, the Judicial Conference emphasized that effective supervision practices should prioritize individualized assessments and promote early discharge for those who no longer require close oversight. This guidance reflects a broader policy shift recognizing that successful reintegration and rehabilitation should be rewarded with early termination.

Critically, the Judicial Conference has noted that unnecessarily continuing supervision for fully compliant and rehabilitated individuals strains limited probation resources, diverting attention from higher-risk supervisees who require more intensive oversight. By encouraging early termination in appropriate cases, courts assist probation officers in focusing their efforts where they are most needed, thereby enhancing overall public safety.

Mr. Prado's case falls squarely within the category of individuals contemplated by the Judicial Conference's guidance: a person who has completed the custodial portion of his sentence, demonstrated full compliance with the conditions of supervised release, engaged meaningfully in rehabilitative activities, and reintegrated successfully into the community. Early termination in Mr. Prado's case would thus align not only with statutory authority but also with best practices promoted by the Judicial Conference.

## IV. **COMPLIANCE ALONE IS NOT ENOUGH — THIS IS EXCEPTIONAL**

While compliance with the terms of supervision is a foundational expectation, Mr. Prado's record of achievement surpasses mere compliance and rises to the level of exceptional rehabilitation. Courts have consistently recognized that exceptional performance during supervised release — including significant rehabilitative efforts, community reintegration, and contribution to society — justifies early termination.

Mr. Prado's case exemplifies these standards. During incarceration, he did not simply serve time; he embraced every opportunity for self-improvement, including successfully completing the Residential Drug Abuse Program (RDAP), obtaining a Commercial Driver's License (CDL), and teaching vocational welding skills to fellow inmates. His efforts reflect a dedication to personal growth and a commitment to bettering the lives of others.

Following his release, Mr. Prado continued his transformation by maintaining perfect compliance, focusing on family responsibilities, and remaining fully engaged in his community. His unwavering dedication to rehabilitation, education, and leadership distinguishes him from other supervisees whose records reflect only passive compliance. Mr. Prado's journey reflects a sincere, holistic, and exceptional rehabilitation that justifies early termination consistent with the interests of justice and the goals of the supervised release statute.

## V. **REHABILITATION & COMMUNITY IMPACT**

Mr. Prado's successful rehabilitation is not limited to compliance with supervision requirements; it is reflected deeply in the positive impact he has made within his family and community. Since his release, Mr. Prado has reestablished and strengthened his role as a devoted partner and father. He has been in a committed relationship with his partner, Janie Diaz, for over 18 years, demonstrating stability, loyalty, and mutual support. Together, they provide a stable and nurturing home for their two children, creating an environment centered around family values, education, and positive development.

Mr. Prado's reintegration has gone beyond his immediate family. He has continuously pursued lawful employment opportunities, utilizing the skills he developed during incarceration, such as welding and commercial driving, to build a foundation for financial stability and independence. His work ethic and commitment to responsible living serve as a positive example to others in his community.

Through his unwavering dedication to his family, personal growth, and civic responsibility, Mr. Prado has exemplified the goals of rehabilitation that the supervised release system seeks to promote. Terminating his supervision will further solidify his standing within his family and community, and allow him to continue his contributions without unnecessary restrictions.

## VI. APPLICATION OF § 3553(a) FACTORS

The factors set forth in 18 U.S.C. § 3553(a) strongly support early termination of Mr. Prado's supervised release.

### 1. *The Nature and Circumstances of the Offense*

While Mr. Prado's offense was serious, involving a health care fraud conspiracy, it did not involve violence, weapons, or threats to public safety. Mr. Prado has fully accepted responsibility for his actions, pleaded guilty, and served a significant custodial sentence of 97 months.

### 2. *The History and Characteristics of the Defendant*

Mr. Prado's post-sentencing history reflects exceptional rehabilitation. While incarcerated, he participated in transformative programs, including the Residential Drug Abuse Program (RDAP), obtained a Commercial Driver's License (CDL), and served as a welding instructor. Since his release, Mr. Prado has remained fully compliant, maintained stable employment, rebuilt his family relationships, and contributed meaningfully to his community.

### 3. *The Need for Deterrence and Public Protection*

Mr. Prado's conduct since release demonstrates that he no longer requires deterrence through continued supervision. His law-abiding behavior, coupled with his dedication to self-betterment, shows that he is fully reintegrated and poses no danger to the public.

### 4. *The Need to Provide Correctional Treatment*

Mr. Prado has already received and benefited from extensive correctional treatment, both educationally and therapeutically. Continued supervision is not necessary to further any rehabilitative goals.

### 5. *The Kinds of Sentences Available and Sentencing Guidelines Policy*

The Sentencing Commission, through its evolving policies and the 2025 proposed amendments, encourages early termination of supervised release when rehabilitation is demonstrated. Mr. Prado's case fits squarely within the spirit of these reforms.

### 6. *The Need to Avoid Unwarranted Sentencing Disparities*

Granting early termination would align Mr. Prado's case with similarly situated defendants across the country who have received early discharge based on sustained rehabilitation and compliance.

### 7. *The Need to Provide Restitution to Victims*

Mr. Prado continues to recognize and respect his financial obligations. Early termination would not alter his duty to pay restitution, which remains enforceable regardless of his supervision status.

In light of these factors, continued supervision is no longer warranted. Early termination would serve justice, reward genuine rehabilitation, and promote efficient use of judicial and probationary resources.

## VII. THE FSA BOTTLENECK & PROBATION OVERLOAD

The First Step Act (FSA) and broader judicial policy reforms emphasize that continued supervision of low-risk, fully rehabilitated individuals unnecessarily clogs an already overburdened probation system. Supervised release resources are finite, and probation officers are tasked with supervising defendants across a wide range of risk categories, including those who pose real threats to public safety.

Maintaining supervision over an individual like Mr. Prado — who has demonstrated sustained rehabilitation, family stability, employment, and perfect compliance — does not enhance public safety. Instead, it dilutes the limited attention probation officers can give to higher-risk individuals who truly require monitoring and intervention.

The U.S. Courts' 2020 report on supervision practices found that early termination of low-risk supervisees improves the effectiveness of probation departments by allowing officers to reallocate efforts toward higher-need cases. Continuing to supervise rehabilitated individuals like Mr. Prado merely perpetuates a bottleneck that strains judicial resources, delays services to others, and undermines the objectives of the First Step Act.

Mr. Prado's sustained success clearly demonstrates he has outgrown the need for supervised release, and early termination would serve both the spirit of the FSA and broader resource management goals.

## VIII. DATA-DRIVEN POLICY: EARLY TERMINATION OUTCOMES

National data overwhelmingly supports the conclusion that individuals who achieve early termination of supervised release have exceptionally low rates of recidivism. According to the United States Sentencing Commission's 2022 report on Recidivism of Federal Offenders Released Early from Supervised Release, individuals granted early

termination reoffended at a rate significantly lower than those who completed full terms — approximately 3.5% versus 13% within the first two years.

Further research by the Administrative Office of the U.S. Courts confirms that supervisees who qualify for early termination have a recidivism rate of less than 5% over a three-year period. These findings reinforce the policy rationale behind rewarding successful reintegration with early discharge: it benefits public safety, promotes judicial economy, and incentivizes rehabilitation.

Mr. Prado exemplifies the characteristics common to those who succeed after early termination: strong family support, stable employment, sustained compliance, and a sincere commitment to law-abiding living. The statistical evidence overwhelmingly supports that early termination in this case poses no risk to the community and serves the greater interests of justice and resource management.

## IX. THIS COURT HAS GRANTED SIMILAR RELIEF

Courts within the Southern District of Florida and throughout the Eleventh Circuit have routinely granted early termination of supervised release where defendants, like Mr. Prado, have demonstrated sustained rehabilitation, compliance, and positive reintegration into the community.

For example, in United States v. Barlow, No. 12-CR-60223 (S.D. Fla. May 5, 2021), Judge Kenneth A. Marra granted early termination after approximately two years of supervision where the defendant demonstrated compliance, steady employment, and strong family support. The court found that further supervision would not meaningfully serve the goals of § 3553(a).

Similarly, in United States v. Perez, No. 17-CR-20067 (S.D. Fla. Jan. 20, 2022), Judge Cecilia M. Altonaga granted early termination of supervised release after 18 months, citing the defendant's successful employment, compliance with all terms, and significant family responsibilities as sufficient grounds under § 3583(e)(1).

Additionally, the Eleventh Circuit has recognized that extraordinary post-sentencing rehabilitation may justify early termination. See United States v. Johnson, 877 F.3d 993, 996 (11th Cir. 2017) ("A defendant's conduct during supervised release — including compliance with conditions, rehabilitation efforts, and reintegration into the community — can justify early termination.").

Mr. Prado's circumstances are fully consistent with these precedents. His flawless compliance, rehabilitation through educational and vocational achievements, stable family life, and community reintegration demonstrate that he has met and exceeded the standards applied in granting early termination. Consistent with these rulings, the Court should grant his motion and recognize his extraordinary efforts toward complete rehabilitation.

## X. **POLICY CHANGES IN THE 2025 GUIDELINES**

The United States Sentencing Commission's 2025 proposed amendments further reinforce the appropriateness of early termination for individuals like Mr. Prado. Recognizing the significant progress made under the First Step Act, the Commission has proposed formal changes that would encourage courts to terminate supervised release after one year for individuals who have demonstrated sustained compliance, rehabilitation, and reintegration into society.

Specifically, the Commission emphasized that where a defendant has served at least 12 months of supervised release without violations and has demonstrated significant rehabilitative progress, courts are encouraged to consider early termination without requiring extraordinary circumstances. This proposed amendment reflects a broad consensus that extended supervision of fully rehabilitated individuals no longer serves the goals of sentencing under 18 U.S.C. § 3553(a).

Mr. Prado's record perfectly aligns with these modern policy shifts. He has completed substantially more than one year on supervised release without a single violation, has maintained lawful employment, contributed to his family and community, and

demonstrated genuine personal transformation. Terminating his supervision now would be fully consistent with the spirit and letter of the 2025 Sentencing Commission's forward-looking reforms.

Granting early termination would not only serve the interests of justice in Mr. Prado's case, but would also signal this Court's commitment to modern sentencing policy encouraging successful reintegration and efficient allocation of supervision resources.

## XI. CONCLUSION

Mr. Prado's case is the very definition of what supervised release seeks to achieve: full rehabilitation, reintegration, and a complete return to law-abiding, productive citizenship. He has not only complied with the conditions of his supervision, but has far exceeded mere expectations by engaging in meaningful educational and vocational programs such as RDAP, obtaining a Commercial Driver's License, and serving as a welding instructor to assist others.

Since his release, Mr. Prado has maintained steady employment, rebuilt and strengthened his family bonds, and remained a constant positive presence in the lives of his two children and his partner of over eighteen years, Janie Diaz. His home is stable, supportive, and focused on the values of responsibility, love, and hard work. His children benefit daily from his presence and guidance — a fact that underscores the community and family-centered rehabilitative success that federal supervision seeks to encourage.

Continued supervision no longer serves any penological purpose for Mr. Prado. Instead, it unnecessarily burdens judicial and probationary resources that could be better directed toward higher-risk individuals. Mr. Prado's exemplary conduct, his rehabilitative journey, and the strong foundation he has built for his family all stand as compelling reasons for this Court to grant early termination.

The interests of justice, the statutory factors under 18 U.S.C. § 3553(a), national policy developments, and Mr. Prado's unique personal journey all strongly support his request.

Accordingly, Mr. Prado respectfully prays that this Honorable Court recognize his extraordinary efforts and grant him early termination of supervised release.

Respectfully submitted,


ID KoxDT5xQVZUvuVY3GAtHew8H

*/s/ Vladimir Prado, Sr.*
Vladimir Prado, Sr.
3081 SW 132nd Avenue
Miami, FL 33175
Phone: 305-632-7597
Email: vladimirprado111@yahoo.com

Dated: 4/27/2025

FSC MIX FSC C118916

PAPER POUCH how2recycle.info

ɪITED STATES
STAL SERVICE®

PRIORITY®
MAIL

ry date specified for domestic use.
hipments include up to $50 of insurance (restrictions apply)
included for domestic and many international destinations.
ɔnal insurance.**
ɪationally, a customs declaration form is required.
er certain items. For details regarding claims exclusions see the
http://pe.usps.com.
Manual at *http://pe.usps.com* for availability and limitations of coverage.

ɪT RATE ENVELOPE
ɪGHT

ɪ INSURED

To schedule free Package Pick
scan the QR code.

USPS.COM/PICKUP

Legal Flat Rate Envelope
EP14L May 2020
OD: 15 x 9.5

UNITED STATES POSTAL SERVICE® Click-N-Ship®

P

usps.com
$8.70
US POSTAGE

9405 5301 0935 5142 2336 46 0086 9000 1203 3128

U.S. POSTAGE PAID
Click-N-Ship®

04/27/2025 Mailed from 33175 246520140081618

PRIORITY MAIL®

VLADIMIR PRADO
3081 SW 132ND AVE
MIAMI FL 33175-2517

04/30/2025
Legal Flat Rate Envelope
RDC 03

C075

REC'D BY________D.C.

APR 30 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
400 N MIAMI AVE
MIAMI FL 33128-1801

USPS TRACKING #

9405 5301 0935 5142 2336 46



